UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SHAYA EFROYMSON
              Plaintiff,

                         -against-

LICENSED BEHAVIORAL ANALYSIS PROFESSIONAL SERVICES, PLLC and
YOCHEVED ADELMAN a/k/a YOCHEVED WASSERMAN
              Defendants.
-------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)

       Plaintiff, SHAYA EFROYMSON, by his attorney, Bernard Weinreb, as and for his Complaint against Defendants, LBAPS and YOCHEVED ADELMAN, alleges as follows:

## I.   NATURE OF CLAIM

1.     This is an action for damages on behalf of Plaintiff, SHAYA EFROYMSON (the "Plaintiff"), pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§207, 216(b) and 260 ("FLSA"), to remedy violations by Defendants, Licensed Behavioral Analysis Professional Services, PLLC ("LBAPS" or "Employer") and YOCHEVED ADELMAN a/k/a YOCHEVED WASSERMAN (hereinafter referred to as "Adelman") (collectively, LBAPS and Adelman will be referred to in this Complaint as the "Defendants") who deprived him of his lawful wages and overtime pay to which he wss entitled under such laws. Plaintiff also seeks relief under the New York Labor Law sections 190-99, 652 and 663 including the wage order entitled "Miscellaneous Industries and Occupations," 12 N.Y.C.R.R. Section 142-3.2 ("New York Labor Law"), and other State Laws that are parallel to the Federal Laws set forth in this paragraph.

## II.   JURISDICTION and VENUE

2.     The jurisdiction of this Court to adjudicate Plaintiffs' First claim is invoked pursuant to 28 U.S.C. sections 1331 and 29 U.S.C. section 216(b), this being a suit authorized and instituted pursuant to the FLSA.

3.    The jurisdiction of this Court to adjudicate Plaintiff's other claims for relief in this action are invoked pursuant to 28 U.S.C. section 1367(a), as these claims are so related as to form part of the same case or controversy.

4.    Venue is proper in this district under 28 U.S.C. §1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, and Defendants operates its business in this district. Plaintiff was employed by Defendants in this District.

### III. PARTIES

5.    At all times relevant to this action, Plaintiff resided in Rockland County, New York.

6.    Plaintiff, Shaya Efroymson, is, and was at all times relevant to this Complaint, a citizen of the United States and a resident of Rockland County, State of New York.   At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant, LBAPS and was otherwise covered under each of the statutes described in paragraph 1 of this Complaint above.   Plaintiff worked as an ABA Para for Defendants for all periods relevant to the Complaint.

7.    The Corporation is based in Brooklyn, New York, and has locations in several states in the United States. Plaintiff performed his services for Defendants in Rockland County, New York. The Corporation is an "employer" and is otherwise covered under each of the statutes described in paragraph 1 of this complaint above. Upon information and belief, the Corporation is a domestic professional limited liabiilty corporation organized and existing under the laws of the State of New York.

8.    Upon information and belief, Yocheved Adelman, a/k/a Yocheved Wasserman (hereinafter in this Complaint, this Defendant will be referred to as "Adelman") is an individual engaging (or who was engaged) in business on behalf of the Corporation in this judicial district during the relevant time period in this Complaint. Defendant, Adelman, is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Adelman, for all periods relevant to the Complaint, possessed operational control over Defendant Corporation, an ownership interest in Defendant, Corporation, and/or controlled significant functions of Defendant, Corporation.   She determined the wages and compensation of the employees of the

Corporation, including Plaintiff's, established the schedules of the employees, was responsible for maintaining employee records, and/or had the authority to hire and/or fire employees.

*Defendants Constitue Joint Employers*

9.      Defendants operate a company which provides Applied Behavior Analysis ("ABA") with the goal of teaching autistic children how to lead fulfilling lives and overcome other challenges that autistic individuals face.

10.      Individual Defendant, Adelman, possesses operational control over the Defendant, Employer, possesses ownership interest in the Defendant, Employer, and/or controls significant functions of Defendant, Employer.

11.      The individual Defendant, Adelman, is associated and a joint employer with the Employer, acts in the same interest of each other with respect to employees, pays employees by the same method, and shares control over the employees.

12.      Each Defendant possessed substantial control over Plaintiff's (and other similarly situated employees) working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff and all similarly situated individuals referred to herein.

13.      Defendants jointly employed Plaintiff (and all similarly situated employees) and are Plaintiff's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 et seq. and the New York Labor Law.

14.      Alternatively, Defendants constitute a single employer of Plaintiff and/or similarly situated employees.

15.      Upon information and belief, the individual Defendant, Adelman, operates the Employer as either an alter ego of herself and/or fails to operate Defendant, Employer as an entity legally separate and apart from herself by among other things:

a)      failing to adhere to corporate formalities necessary to operate Defendant Employer as a corporation,

b)      defectively forming or maintaining the corporate entity of Defendant Employer by, among other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)      transferring assets and/or debts freely as between the Defendants.

3

d)    operating Defendant Employer for her own benefit as the sole or majority shareholder,

e)    operating Defendant Employer for her own benefit and maintaining control over this corporation as a closed corporation,

f)    intermingling assets and/or debts of her own with Defendant Employer,

g)    diminishing and/or transferring assets of Defendant Employer to avoid full liability as necessary to protect her own interests, and

h)    other actions evincing a failure to adhere to the corporate form.

16.    At all times relevant to the Complaint, Defendants were Plaintiff's employers within the meaning of the FLSA and New York Labor Law, Defendants had the power to hire and fire Plaintiff, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff's services.

17.    Upon information and belief, in each year from 2019 to 2024, Defendants, both separately and jointly had a gross annual volume of sales of not less than$500,000 (exclusive of excise taxes at the retail level that are separately stated.)

18.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce.   As an example, numerous items that were used in the business are goods produced outside of the State of New York and provided its services in more than 20 states in the United States.

*Individual Plaintiff*

19.    Plaintiff is a former employee of Defendants who was employed as an ABA para.

20.    Plaintiff seeks to represent a class of similarly situated individuals under 29 U.S.C.

21.    Plaintiff was employed by Defendants during July and August 2021 and from approximately March 2022 until on or about June, 2024.

22.    Defendants employed Plaintiff as an ABA para. The job of Employee was to teach and train autistic children how to navigate life by improving such children social skills and other life skills.

4

23.    Plaintiff's work duties required neither discretion nor independent judgment.

24.    Plaintiff was not an exempt employee under the federal and New York labor laws.

24A.    Defendants' wage and hour violations, as well as the failure to provide wage statements under the New York Labor Law, extended beyond Plaintiff to all other situated employees. Plaintiff seeks certification of this action as a collective action on behalf of himself, individually, and all other similar situated employees and former employees of Defendants pursuant to 29 U.S.C. §216(b).

25.    Set forth below are the facts pertinent to each of the specific causes of action set forth in the Complaint below.

## IV.    AS AND FOR FIRST CLAIM FOR RELIEF<br>(UNPAID WAGES AND OVERTIME/FLSA)

26.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 25, as if set forth fully herein.

27.    Plaintiff   started working for Defendants in the summer, July and August, of the summer of 2021.   Plaintiff's salary for that summer was approximately $960 per week.

28.    Plaintiff worked for approximately 9 weeks during the summer of 2021, Thus, he should have been paid $8,649 for that summer. However, all that Plaintiff received for those nine weeks of the summer or 2021 was $986.   Thus, Plaintiff was underpaid by Defendants for his work for that summer in the amount of approximately $7,663.

29.    After that summer, Plaintiff began working for the employer on or about March 1, 2022, at the rate of approximately $24 per hour.   This rate of pay was in effect through on or about November 14, 2022.   Plaintiff believes that during the period March 1, 2022 through November 14, 2022 he generally did not work overtime and is not owed overtime pay for that period of time of his employment for the Employer.

30.    On or about November 15, 2022, Plaintiff's salary was raised to $84,000 per year, which converts to a rate of $40.38 per hour.   This rate of pay was in effect through Plaintiff's termination of employment on or about June 30, 2024.

31.    Plaintiff worked for approximately 50 hours for each of his 85 weeks of employment during the period November 15, 2022 through June 30, 2024.

32.    Plaintiff was not paid for any of his hours of work over 40 in each of those weeks.

33.    Plaintiff is owed time and a half, or $60.57 per hour, for each of his hours of service over 40 for each of his 85 weeks of employment between November 15, 2022 and June 30, 2024. Plaintiff did not receive this pay from Defendants for his overtime.

34.    Thus, Plaintiff is owed $51,485 ($60.57 per hour, times 10 hours a week, times 85 weeks) for his period of service between October 15, 2022 and June 30, 2024.

35.    Thus, Plaintiff is owed approximately $59,148 ($7,663 - see par. 28, plus $51,485 - see par. 38), for his unpaid straight time and overtime during his period of employment with the Defendants during the period July 2021 through June 30, 2024..

36.    In addition, pursuant to Fair Labor Standards Act, Plaintiff is owed an additional $59,148 in liquidated damages. Thus, the total of the straight time, overtime and liquidated damages due Plaintiff from Defendants is $118,296.    .

37.    Furthermore, Defendants are liable for reasonable attorneys fees at the amount awarded by the Court, as per the federal and state labor law statutes.

38.    To Plaintiff's knowledge, the Defendants did not utilize any time tracking device such as punch cards, that accurately reflected the actual hours Plaintiff worked.

39.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff (and all similarly situated employees) to work in excess of 40 hours a week without paying them the appropriate overtime compensation as required by federal and state laws.

40.    Plaintiff was a victim of Defendants' common policy and practice which violated his rights under the FLSA and New York Labor Law by, *inter alia,* not paying them the wages they were owed for the hours they worked.

41.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate and complete time sheets and payroll records.

42.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and the New York Labor Law.

43.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiff properly for his full hours worked.

44.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and New York Labor Law.

45.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff and other similarly situated current and former workers.

## V.   AS AND FOR SECOND CLAIM FOR RELIEF
## (UNPAID WAGES AND OVERTIME/NEW YORK LABOR LAW)

46.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 45, as if set forth fully herein.

47.     Plaintiff is owed $59,148 in unpaid wages and overtime pay pursuant to the New York Labor Law, on account of the Defendants not paying him the pay for his overtime hours to which he is entitled to under the New York Labor Law.

48.     In addition, Plaintiff is entitled to an additional $59,148 as liquidated damages with respect to his overtime pay, plus statutory interest on such amounts.

49.     Thus, the total of the straight time, overtime and liquidated damages due Plaintiff from Defendants under the New York Labor Law is $118,296.

## VI.   AS AND FOR THIRD CLAIM FOR RELIEF
## (FAILURE TO PROVIDE WAGE STATEMENTS/NEW YORK LABOR LAW)

50.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 49, as if set forth fully herein.

51.     Defendants failed to provide Plaintiff and other employees with accurate wage statements at the time of their payment of wages, containing the dates of work covered by the payment of wages; name of employee; name of employer; address and

7

phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by §195(3).

52.    As a result of not receiving such wage statements, Plaintiff was harmed in that -

- the Defendants' failure to provide him with the N.Y. Lab. Law § 195.1 notice and accurate wage statements deprived him of the information necessary for review their wages and hours worked and was a direct cause for their economic injury and, in fact, resulted in his wages being underpaid.

- If   Defendants had complied with the N.Y. Lab. Law §§ 195.1 and 195.3 notices and wage statements, Plaintiff would have been able to see that he was not being lawfully paid and would have been able to avoid underpayment of his wages.Van Duser v. Tozzer Ltd., 2024 U.S. Dist. LEXIS 198344, *14

- **Inability to Track Wages**: The plaintiff was unable to verify his wages and deductions, leading to confusion and difficulty in managing personal finances.

- **Financial Planning Disruption**: The lack of wage statements made it challenging for the plaintiff to budget and plan for expenses, causing financial strain.

- **Delayed or Missed Payments**: The absence of wage notices resulted in the plaintiff not being aware of his pay schedule, causing delays in receiving payments or missing out on wages altogether.

- **Legal and Administrative Costs**: The plaintiff incurred additional costs in seeking legal advice or assistance to resolve wage-related issues caused by the lack of proper documentation.

**Emotional Distress**: The uncertainty and stress caused by not receiving wage statements or notices negatively impacted the plaintiff's mental well-being.

## VII.   AS AND FOR FOURTH CLAIM FOR RELIEF
## (FAILURE TO PROVIDE STATEMENTS AT TIME OF HIRE/NEW YORK LABOR LAW)

53.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 52, as if set forth fully herein.

54.   Defendants failed to provide Plaintiff and other employees, at the time of hiring,   a statement in English and the employee's primary language, containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law   §195(1).

55.   As a result of not receiving such wage notice at his time of hire, Plaintiff suffered the harms describe in paragraph 54 of the Complaint above relating to his failure to receive wage statements

## VIII.   FLSA COLLECTIVE ACTION CLAIMS

56.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 55, as if set forth fully herein.

57.   Plaintiff brings his FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

58.   At all relevant times, Plaintiff and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty

(40) hours per workweek and minimum wage under the FLSA and willfully failing to keep records under the FLSA.

59.     The claims of Plaintiff stated herein are similar to those of other employees.

## XVII. PRAYER FOR RELIEF

1.     Plaintiff requests that the Court award Plaintiff the following relief:

### ON THE FIRST CLAIM FOR RELIEF

A.     Actual damages for loss of wages and overtime pay, in the amount of $59,148; plus

B.     Liquidated damages equal to $59,148; plus

C..     Reasonable attorney's fees.

### ON THE SECOND CLAIM FOR RELIEF

A.     Actual damages for loss of wages and overtime pay, in the amount of $59,148 plus

B.     Liquidated damages equal to $59,148; plus

C..     Reasonable attorney's fees.

### ON THE THIRD CLAIM FOR RELIEF

A.     $5,000

### ON THE FOURTH CLAIM FOR RELIEF

A.     $5,000

### ON ALL CLAIMS

2.     Award Plaintiff the costs of this action.

3.     An order enjoining Defendant from engaging in the wrongful practices

10

4.    Grant Plaintiff such other and further relief as may be deemed necessary, just and proper by this Court.

Dated: Spring Valley, New York
        December 26, 2024

Bernard Weinreb, Esq.
Attorney for Plaintiff
2 Perlman Drive, Suite 310
Spring Valley, New York 10977
(845) 369-1019
boruchw@cs.com

11