UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SHAYA EFROYMSON,

Plaintiff,

Civil Action No. 7:25-cv-01013-CS

-against-

LICENSED BEHAVIORAL ANALYSIS PROFESSIONAL SERVICES, PLLC and YOCHEVED ADELMAN a/k/a YOCHEVED WASSERMAN,

Defendants.
------------------------------------------------------------X

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS MOTION TO PARTIALLY DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Bernard Weinreb
Attorney at Law
2 Perlman Drive - Suite 310
Spring Valley, New York 10977

(845) 369-1019

## TABLE OF CONTENTS

**Page**


Preliminary Statement........................................................................................................1

STATEMENT OF FACTS.....................................................................1

LEGAL STANDARD.........................................................................4

ARGUMENT

I. Defendants' Motion Does Not Seek Dismissal of the FLSA and NYLL Claims.........................................................................5

II. The SAC Plausibly Pleads Retaliation under the FLSA and NYLL..........6

III The Alleged Campaign Would Dissuade a Reasonable Employee from Continuing to Pursue Wage Claims.........................................8

IV. The SAC and Documentary Evidence Directly Refute Defendants' Contention that Adelman Was Not Connected to the Rabbinical Proceedings.........................................................................10

V. Seventh Claim for Relief Independently States a Defamation Claim Based on the Publicly Posted Seruv...........................................12

VI. Any Perceived Deficiency in the Employment- Reference Allegations Does Not Require Dismissal of the Seruv Based Claim.........................14

VII. If the Court Finds Any Clarification Necessary, Plaintiff Should be Granted Leave to Amend.........................................................14

CONCLUSION.........................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Accadia Site Contr., Inc. v. Skurka,*
129 AD 3d 1453 (2022)……………………………………..……..…12, 13

*Anderson News, LLC v. Am. Media, Inc.,*
680 F.3d 162 (2012)……………………………..……………..……..…16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)…………………….…………………………….……………..4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2009)………………………………………………..……..4, 5

*Calhoun v. County of Herkimer.,*
114 AD 3d 1394 (2014)……………….………………………………………7

*Chambers v. Time Warner,Inc.,*
282 F3d 147 (2d Cir. 2002)……………………………………………………4

*DaCosta v. New York City Dept. Of Bldgs.,*
203 AD 3d 571 (2022)…………………………………………………..…10

*Foman v. Davis.,*
371 U.S. 178 (1962)…………………………..…………………..…16

*Geraci v. Probst.,*
15 NY 3d 336 (2010)……………………………..………………..…13

*Langton v. Warwick Val. Cent. Sch. Dist.,*
144 AD 3d 867 (2016) …………………………………………………....6

*Littlejohn v. City of New York,*
795 F.3d 297 (2d Cir. 2015) …………………………………………....4

### STATUTES

Fed. R. Civ. P. 12(b)(6)…………….………..…………..……………………………1

Fed. R. Civ. P. 15…………….………..…………..……………………………16

NYLL section 215……………………………………………………5, 6, 8, 10, 11

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to Defendants' partial motion to dismiss Count VII of the Second Amended Complaint ("SAC"). Section VII of the SAC alleges that Defendant Adelman engaged in a coordinated campaign of retaliation and defamation after Plaintiff asserted his legal rights, including initiating multiple hazmanos through her agents to compel Plaintiff to abandon his case in federal court and try the case before its bais din, escalating the matter to the Badatz with a demand exceeding $100,000 on account of the legal fees incurred by Adelman in this federal case, and causing the issuance and public online posting of a seruv. These actions, supported by documentary exhibits, state plausible claims for retaliation and defamation under Rule 12(b)(6). Defendants' motion—directed almost entirely at the defamation claim and offering only a passing reference to retaliation—should be denied.[1]

## STATEMENT OF FACTS

### A. Adelman Initiated the Hazmana Campaign

The SAC alleges, and the documentary evidence confirms, that Defendant Yocheved Adelman personally initiated the hazmana campaign against Plaintiff. Adelman contacted Rabbi Gold (also referred to in some communications as "Rabbi Stewart") and requested that he summon Plaintiff to a bais din to have his wage claim determined by the bais din. The hazmanos themselves expressly state that they were issued "at the request of Yocheved Wasserman." (See **Exhibit A**.) The hazmonos

[1] Defendants' memorandum refers generally to "Count VII," but does not meaningfully brief the retaliation claim. To the extent Defendants intended to challenge retaliation, such argument is waived by failing to develop it.

issued by a later bais din, the Badatz, discussed below in this Statement of Facts (see **Exhibit B**), also used similar language indicating that those hazmanos were issued at the request of Mrs. Adelman. These summonses were not part of a legitimate dispute- resolution process. Rather, they were issued immediately after Plaintiff asserted his legal rights, and were intended to pressure Plaintiff to drop his lawsuit and to create a false record of "non- appearance."

**B. The Gold Hazmanos Imposed Abusive Next- Day Deadlines**

The three hazmanos issued by Rabbi Gold imposed abusive next- day deadlines. Each hazmana was sent late at night, required Plaintiff to respond by 10:00 a.m. the next morning, and required him to appear at 2:30 p.m. the same day. (See **Exhibit A**.) The SAC alleges that these deadlines were intentionally impossible and designed to manufacture the false appearance that Plaintiff was refusing to appear. Under widely recognized bais din procedure, a seruv may not be issued until three hazmanos have been ignored. Adelman's agents therefore issued three hazmanos with impossible deadlines to create a pretext for issuing a seruv.

**C. Gold's Abusive Emails**

The SAC alleges that Rabbi Gold sent multiple abusive emails to Plaintiff, Plaintiff's counsel, and Rabbi Gobioff. These emails included statements such as "liars," "phonies," "disgraceful sewer Yidden," "Bernard YEMACH SHMO," and "you won't see a penny." (See **Exhibit C**.) These communications were sent in connection with the hazmana campaign and were part of Adelman's effort to intimidate Plaintiff and pressure him to abandon his lawsuit.

Gold also falsely represented that Rabbi Gobioff required Plaintiff to appear in bais din. This was untrue. Rabbi Gobioff's own email — included in the SAC — states

that Plaintiff had a heter to proceed in secular court and that Adelman was the mesareves. (See **Exhibit C**.) Gold's misrepresentation was part of the retaliatory campaign initiated by Adelman.

**D. Misrepresentation of Rabbi Gobioff's Position**

The SAC alleges that Gold repeatedly invoked Rabbi Gobioff's name to pressure Plaintiff, falsely claiming that Rabbi Gobioff required Plaintiff to appear in bais din. In reality, Rabbi Gobioff's email confirms that Plaintiff had permission to proceed in secular court and that Adelman was the party refusing to appear. (See **Exhibit C**.) This misrepresentation was communicated to Plaintiff and his counsel and was part of the broader retaliatory effort.

**E. Adelman Escalated the Campaign by Initiating a Badatz Proceeding**

When the Gold hazmanos failed to produce the desired result — namely, Plaintiff's capitulation — Adelman escalated her campaign by initiating a proceeding before the Badatz in which Adelman sued Plaintiff and his lawyer, Bernard Weinreb, to recover $100,000 plus in legal fees that Adelman allegedly incurred in defending the federal court wage lawsuit. The Badatz issued **three hazmanos**, consistent with the procedural requirement for issuing a seruv. Unlike the Gold hazmanos, the Badatz hazmanos did **not** impose next-day deadlines. However, the Badatz hazmana explicitly lists Adelman as the requesting party and threatens a claim of **over $100,000** against Plaintiff and his counsel. (See **Exhibit B**.) This escalation demonstrates Adelman's intent not only to pressure Plaintiff to drop his lawsuit, but also to retaliate by attempting to extract money from Plaintiff and his attorney.

**F. The Seruv Was Issued and Published Online**

The SAC alleges that a seruv was subsequently issued and published online, accessible to community members, employers, and associates. (See **Exhibit D**.) Unlike the hazmanos — which are not public and therefore did not damage Plaintiff's reputation — the seruv was publicly posted, causing reputational harm and constituting defamation per se. The SAC alleges that Adelman's actions directly caused the issuance and publication of the seruv.

**G. Negative Employment Reference**

The SAC further alleges that Defendants provided a negative employment reference containing false statements, causing additional economic harm. This negative reference was part of the same retaliatory and defamatory campaign initiated by Adelman.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating such a motion, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

A claim is plausible when the pleaded facts allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court may consider documents attached to the complaint, incorporated by reference, or integral to the pleading. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

At this stage, the Court does not weigh evidence, resolve factual disputes, or assess credibility. *Twombly*, 550 U.S. at 555. The question is only whether the SAC alleges facts that, if true, plausibly state claims for retaliation and defamation. As set forth below, Count VII easily meets this standard.

## ARGUMENT

### I. Defendants' Motion Does Not Seek Dismissal of the FLSA and NYLL Retaliation Claims

Defendants' motion seeks dismissal of Count VII of the Second Amended Complaint ("SAC"). Apparently, Defendants meant to challenge the facts alleged set forth in section VII of the SAC, relevant to Plaintiff's statutory retaliation claims under the Fair Labor Standards Act ("FLSA") and Count VI under New York Labor Law ("NYLL") § 215 and a common law defamation claim, as Plaintiff's Fifth, Sixth and Seventh Claims for Relief in the SAC. Defendants did not specify which causes of action they are seeking to dismiss, and it is not clear on what basis he seeks to have these causes of action dismissed. Nevertheless, we are responding to the motion to the best of our abilities of our understanding of the Defendants arguments.

It is our understanding that Defendants are arguing that the retaliation claim on account of Adelman having two Batei Din summon Plaintiff, and one summoning his attorney, to appear before it does not allege that Adelman or LBAPS was a party to the bais din proceeding or that those bais din proceedings were adversarial. Thus, there was no showing these batein dinim hazmonos were retaliatory. Furthermore, Defendants argue that the SAC contains no allegation connecting Adelman to the proceedings

If the Court construes that limited discussion as an attempt to challenge Counts V and VI, the challenge fails. The SAC alleges that Plaintiff engaged in protected activity by filing and prosecuting this federal action asserting wage-and-hour claims; that Defendants responded after and because of that protected activity; and that Adelman and those acting in concert with her undertook a coordinated campaign intended to punish Plaintiff, disrupt this litigation, and coerce Plaintiff into abandoning his claims.

The protected activity was not merely an event of which Defendants became aware upon service. It was Plaintiff's filing and continued prosecution of his federal wage-and-hour complaints. The retaliatory campaign allegedly followed that protected activity and targeted the federal action itself: the Gold proceeding sought to pressure Plaintiff to withdraw the federal case and submit the wage dispute to a bais din, while the Badatz proceeding asserted a claim exceeding $100,000 against Plaintiff and his counsel arising from Adelman's legal fees incurred in defending this action. The alleged retaliation thus was directed at the very conduct protected by the FLSA and NYLL.

## ARGUMENT

### II. The SAC Plausibly Pleads Retaliation Under the FLSA and NYLL

A retaliation claim requires protected activity, the defendant's awareness of that activity, adverse action, and a causal connection between the protected activity and the adverse action. <u>Langton v Warwick Val. Cent. Sch. Dist.</u>, 144 A.D.3d 867, 868 (2d Dep't 2016). NYLL § 215 broadly prohibits an employer, its agent, or "any other person" from discharging, threatening, penalizing, discriminating, or retaliating against an employee because the employee instituted a proceeding under or related to

the Labor Law or otherwise exercised rights protected by that law. NY CLS Labor § 215 (2023).

The SAC pleads each element. Plaintiff engaged in protected activity by filing the original and amended complaints asserting federal and state wage-and-hour violations. Defendants necessarily knew of that activity because they were defending the action and participating in discovery when the retaliatory conduct occurred. The SAC then identifies the ensuing conduct in detail: proceedings designed to force Plaintiff to abandon this action, hazmanos issued on abusive schedules, a publicly posted seruv, a second proceeding asserting more than $100,000 against Plaintiff and his counsel, pressure directed at Plaintiff's personal rabbi, and a false negative employment reference.

The causal connection is direct. The SAC alleges that Defendants launched the campaign in response to the filing of this action and expressly designed it to punish Plaintiff for asserting his rights and coerce him into abandoning his claims. A causal connection may be established directly through evidence of retaliatory animus or indirectly through close temporal proximity between the protected activity and the retaliatory treatment. Calhoun v County of Herkimer, 114 A.D.3d 1304, 1307 (4th Dep't 2014). Here, Plaintiff alleges both: the campaign followed the filing and prosecution of this action, and its stated objective was to terminate or obstruct the action itself.

This case therefore does not depend on a bare allegation that adverse conduct happened at some unspecified time after protected activity. The subject matter, targets, timing, and asserted objectives of the Gold and Badatz proceedings directly connect them to Plaintiff's federal wage litigation.

## ARGUMENT

### III. The Alleged Campaign Would Dissuade a Reasonable Employee from Continuing to Pursue Wage Claims

The retaliation alleged here was not a conventional personnel action, nor did it need to be one under the NYLL. Section 215 expressly reaches threats, penalties, discrimination, and retaliation "in any other manner."NY CLS Labor § 215 (2023). The SAC describes a coordinated campaign that raised the religious, communal, professional, and financial cost of continuing this lawsuit.

First, the SAC alleges that Adelman caused Gold to initiate purported rabbinical proceedings against Plaintiff after this action was commenced. Gold then issued three hazmanos, each delivered late at night and requiring Plaintiff to respond the following morning and appear that same afternoon. The SAC alleges that those repeated, extraordinarily abbreviated schedules were calculated to make meaningful compliance impossible and to manufacture a basis for portraying Plaintiff as having refused rabbinical process.

The objective of the Gold proceeding was to compel Plaintiff to withdraw this federal wage-and-hour action and submit the dispute to Gold's bais din instead. The SAC expressly alleges that Gold's proceeding was initiated for the purpose of harassing and coercing Plaintiff into withdrawing his civil wage claims. Thus, the alleged retaliation was not an incidental consequence of an unrelated religious dispute. The proceeding itself was allegedly used as leverage to force Plaintiff to relinquish the forum and statutory claims he had chosen to pursue.

Second, when Plaintiff did not capitulate, Gold caused a seruv and related communal sanctions to be issued against him. The seruv publicly labeled Plaintiff a "mesarev

l'din" and was posted online where members of Plaintiff's religious and professional communities could access it. The SAC alleges that such a publication carries profound stigma within Plaintiff's community and impairs the subject's ability to participate in religious, social, and economic life.

Third, Adelman allegedly escalated the campaign by initiating a separate proceeding before the Badatz. That proceeding named both Plaintiff and his counsel as respondents and asserted claims exceeding $100,000. The accompanying documents further establish that the claim sought recovery of legal fees Adelman incurred in defending this federal action. (Ex. B.) In other words, after Plaintiff invoked federal and state wage laws, Adelman allegedly attempted to make Plaintiff and his attorney personally liable for the expense of her defense.

The SAC alleges that the Badatz proceeding was intended to threaten counsel's continued representation and pressure Plaintiff into abandoning this litigation. Its timing further supports that inference: Adelman initiated it on or about the date she was scheduled to be deposed, allegedly to delay or avoid the deposition, burden Plaintiff's counsel, and coerce Plaintiff to withdraw his claims.

Fourth, Adelman allegedly contacted Plaintiff's personal rabbi to have him urge or direct Plaintiff to drop the lawsuit. The SAC alleges that Adelman sought to exploit the authority Plaintiff's rabbi held in Plaintiff's religious life as a means of coercing him to surrender his federal and state rights.

Fifth, Adelman or persons acting at her direction allegedly provided a false negative reference to a prospective employer or professional contact, resulting in lost employment and professional opportunities. New York authority recognizes that

blacklisting and negative references to prospective employers may constitute adverse retaliatory action. DaCosta v. New York City Dept. of Bldgs., 203 A.D.3d 571, 572 (1st Dep't 2022).

Considered together, these allegations describe an escalating campaign aimed at Plaintiff's ability and willingness to continue this action. The campaign allegedly subjected him to public religious censure, threatened him and his attorney with a six-figure claim tied to the defense of this lawsuit, enlisted his personal rabbi to pressure him, and impaired his employment prospects. The SAC therefore alleges retaliation squarely within the conduct prohibited by NYLL § 215.

## ARGUMENT

### IV. The SAC and the Documentary Evidence Directly Refute Defendants' Contention That Adelman Was Not Connected to the Rabbinical Proceedings

Defendants principally argue that the SAC fails to allege that Adelman was a party to the Gold or Badatz proceedings. That contention is contradicted by both the SAC and the documents underlying its allegations.

**A. The SAC Repeatedly Alleges Adelman's Role -** Paragraphs 32 through 59 allege that Adelman caused the Gold proceeding to be initiated, arranged the separate Badatz proceeding, pressured Plaintiff's personal rabbi, and used the proceedings as part of a campaign to disrupt this action. The SAC further alleges that Adelman's campaign included six hazmanos, the resulting seruv, a proceeding against Plaintiff and his counsel seeking more than $100,000, and a negative employment reference.

Paragraph VII of the SAC, as well as the Fifth and Sixth Claims for Relief in the SAC incorporate those allegations and identify Adelman's role in each component of the campaign. The Seventh Cause of Action in the SAC likewise alleges that Defendants

made or caused the publication of the challenged statements to members of Plaintiff's religious community, religious leaders, and prospective employers. Defendants' assertion that the SAC contains no allegation connecting Adelman to the proceedings relating to the Batei Din cannot be reconciled with the pleading's actual allegations.

**B. Each of the Six Hazmanos Identifies Adelman as the Requesting Party -** The documents are even more direct. Each of the six hazmanos—three from Gold's bais din and three from the Badatz—states on its face that it was issued at Adelman's request. (Exs. A and B.) The Gold hazmanos identify "Yocheved Wasserman," the name by which Adelman is also known, as the requesting party, and the Badatz hazmanos similarly identify Adelman as the party requesting that proceeding.

These are not inferential allegations of participation. The tribunals' own documents identify Adelman as the person who requested the proceedings. They directly refute Defendants' contention that Adelman was not alleged to be a party or participant.

**C. Adelman's Email Confirms Her Active Participation-** Plaintiff is also submitting Adelman's email to Gold/Stewart stating that she planned to attend the din torah the following day. (Exhibit E.) That email confirms that Adelman was actively coordinating with Gold and preparing to appear on the same next-day schedule imposed on Plaintiff. It corroborates the SAC's allegation that Adelman initiated and participated in the proceeding rather than acting as a detached observer.

Adelman's formal designation in a rabbinical caption is not the dispositive point. The SAC alleges that she requested, caused, coordinated, and intended to participate in the proceedings. The six hazmanos and her own email confirm those allegations. Moreover, NYLL § 215 applies not only to an employer, but also to an employer's

agent and "any other person" who threatens, penalizes, or retaliates against an employee for protected activity.NY CLS Labor § 215 (2023). Liability therefore does not turn on whether Adelman held a particular formal title in a collateral proceeding.

## ARGUMENT

### V. Seventh Claim for Relief Independently States a Defamation Claim Based on the Publicly Posted Seruv

Under New York law, the elements of defamation are a false statement, publication without privilege or authorization to a third party, fault amounting at least to negligence, and either special harm or defamation per se. Accadia Site Contr., Inc. v Skurka, 129 A.D.3d 1453, 1454 (4th Dep't 2015). The SAC adequately alleges each element with respect to the publicly posted seruv.

The SAC identifies the challenged publication and its substance. It alleges that the seruv falsely represented that Plaintiff had refused to comply with a legitimate rabbinical tribunal, was properly in contempt of lawful rabbinical process, and had acted dishonestly or in bad faith concerning his religious obligations. It also alleges why those representations were false: Gold's tribunal lacked legitimacy, the hazmanos imposed abusive schedules, and Plaintiff had obtained authorization to proceed in secular court.

The SAC specifically alleges publication to third parties. The seruv was posted online in a manner accessible to members of Plaintiff's religious community, including actual or potential employers, customers, clients, and community associates. Section VIi of the SAC and the Seventh Claim for Relief further identifies community members, religious leaders, and prospective employers as recipients or intended recipients of the challenged statements.

Defendants' attempt to focus on the preceding hazmanos misses the central defamatory publication. The hazmanos are relevant because they show Adelman's initiation of the proceedings and the manufactured basis for the seruv. The defamatory publication itself is the seruv, which was posted publicly and communicated the allegedly false assertion that Plaintiff had wrongfully refused legitimate rabbinical process.

The SAC also adequately alleges Adelman's responsibility. A person who gives a statement to a publication representative while authorizing or intending publication may be responsible for the resulting publication. Id. New York law likewise recognizes potential responsibility for a foreseeable repetition when the originator had reason to expect that the statement would be repeated. Geraci v Probst, 15 N.Y.3d 336, 343 (2010). Here, the SAC alleges more than mere foreseeability: Adelman initiated the process that produced the seruv and caused or directed its issuance, online publication, and later deletion.

The documentary evidence reinforces that inference. Every hazmana identifies Adelman as the requesting party, and her email states that she intended to attend the din torah. (Exs. A, B, and F.) Those documents support the pleaded inference that Adelman authorized and participated in the process through which the seruv was created and published.

Finally, the SAC alleges both reputational and economic harm. It alleges damage to Plaintiff's standing within his religious community, impairment of his employment and business opportunities, emotional distress, and exclusion from aspects of community and professional life. Count VII therefore does not rest on an unidentified statement or an abstract claim of reputational injury.

## ARGUMENT

### VI. Any Perceived Deficiency in the Employment-Reference Allegations Does Not Require Dismissal of the Seruv-Based Claim

Defendants separately contend that the employment-reference allegations do not identify the precise words, speaker, recipient, or date. But the Seventh Claim for Relief does not depend solely on the employment reference.

The seruv is a separate and specifically identified publication. The SAC alleges what the seruv communicated, why its assertions were false, how it was disseminated, the audience that could access it, Adelman's role in causing it, and the resulting reputational and professional harm. Defendants' objections to the degree of detail concerning the separate employment reference do not answer those allegations.

The SAC also provides meaningful notice of the employment-reference theory. It alleges that Adelman or persons acting at her direction gave a false reference to at least one prospective employer or professional contact; that the reference concerned Plaintiff's performance, character, honesty, or fitness for employment; that it was motivated by Plaintiff's wage claims; and that it caused lost employment and professional opportunities. Whether discovery ultimately substantiates those allegations presents a different question from whether the independently pleaded seruv claim should be dismissed.

## ARGUMENT

### VII. If the Court Finds Any Clarification Necessary, Plaintiff Should Be Granted Leave to Amend

The existing SAC already alleges that the Gold proceeding was used to coerce Plaintiff into withdrawing his civil wage claims. It also alleges that the Badatz

proceeding asserted claims exceeding $100,000 against Plaintiff and his counsel, was timed to coincide with Adelman's deposition, and was intended to disrupt this litigation and threaten counsel's continued representation.

If the Court nevertheless concludes that the SAC does not state those matters with sufficient explicitness, Plaintiff respectfully requests leave to amend to clarify:

1. The Gold hazmanos sought to compel Plaintiff to withdraw this federal action and submit the wage-and-hour dispute to Gold's bais din.

2. Each of the six hazmanos stated that it was issued at Adelman's request.

3. Adelman emailed Gold/Stewart that she planned to attend the din torah the following day.

4. The Badatz proceeding asserted Adelman's claim exceeding $100,000 against Plaintiff and his counsel for legal fees Adelman incurred defending this federal action.

5. The Badatz claim against counsel was intended to burden the continued representation of Plaintiff and increase the cost of prosecuting his wage claims.

We are attaching a proposed Third Amended Complaint (see Exhibit F attached hereto) that modifies the fact section of section VII of the Complaint to incorporate these points. These modifications are relatively minimal. The proposed Amended Complaint is marked up to show the changes made from the SAC. We will also attach the six hazmonos as Exhibits to the Third Amended Complaint.

Rule 15's directive that leave to amend be freely given must be heeded. Absent undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility, a

plaintiff should be permitted to test a claim on its merits. Foman v. Davis, 371 U.S. 178, 182 (1962). Leave generally should be freely granted, and futility exists when the proposed pleading would itself fail to state a claim.Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

The proposed clarifications would not introduce a new dispute or an unrelated theory. They would provide additional detail concerning the same Gold and Badatz proceedings already described in paragraphs 32 through 59 and incorporated into The Fifth, Sixth and Seventh Claims for Relief. The six hazmanos and Adelman's email provide concrete documentary support for the proposed allegations. (Exs. A, B, and F.)

The proposed amendment would therefore directly address the pleading objections raised in Defendants' motion. Defendants could not plausibly claim surprise or unfair prejudice from allegations clarifying the identity of the requesting party, the objectives of the proceedings, and the basis of the Badatz demand—issues Defendants themselves placed in dispute.

## CONCLUSION

Accordingly, Defendants' motion seeking dismissal of Count VII (which seems to relate to the Fifth, Sixth and Seventh Claims for Relief in the complaint) should be denied. These claims for relief should remain undisturbed because the SAC plausibly alleges retaliation after and because of Plaintiff's filing and prosecution of this wage-and-hour action; the motion to dismiss the Seventh Claim for Relief should be denied because the SAC adequately alleges Adelman's responsibility for the false, publicly posted seruv and the resulting harm. Alternatively, Plaintiff should be granted leave to amend to add the clarifications identified above.

Dated : Spring Valley, NY 10977
October 12, 2026

Respectfully Submitted,

Bernard Weinreb