# EXHIBIT F

MARKED COPY SHOWING CHANGES FROM SAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

SHAYA EFROYMSON,

Plaintiff,

Civil Action No. 7:25-cv-01013-CS

-against-

LICENSED BEHAVIORAL ANALYSIS PROFESSIONAL SERVICES, PLLC and YOCHEVED ADELMAN a/k/a YOCHEVED WASSERMAN,

Defendants.
-----------------------------------------------------------X

THIRD AMENDED COMPLAINT
COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)

Plaintiff, SHAYA EFROYMSON ("Plaintiff"), by his attorney, Bernard Weinreb, as and for his Third Amended Complaint against Defendants, Licensed Behavioral Analysis Professional Services, PLLC ("LBAPS" or "Employer") and Yocheved Adelman a/k/a Yocheved Wasserman ("Adelman") (collectively, "Defendants"), alleges as follows:

I. NATURE OF CLAIM

1. This is an action for damages on behalf of Plaintiff pursuant to the Fair Labor Standards Act of 1938, as amended. 29 U.S.C. §§ 207, 215(a)(3), 216(b) and 260 ("FLSA"), to remedy violations by Defendants who deprived him of his lawful wages and overtime pay to which he was entitled under such laws, and who thereafter engaged in a systematic campaign of retaliation against Plaintiff for exercising his protected rights under such laws.

2. Plaintiff also seeks relief under the New York Labor Law ("NYLL"), including NYLL §§ 190–199, 652 and 663, and the wage order entitled "Miscellaneous Industries and Occupations." 12 N.Y.C.R.R. § 142-3.2, NYLL § 215, and under New York common law for defamation, and other State laws that are parallel to the Federal laws set forth in this Complaint.

II. JURISDICTION AND VENUE

3. The jurisdiction of this Court to adjudicate Plaintiff's first claim is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this being a suit authorized and instituted pursuant to the FLSA.

4. The jurisdiction of this Court to adjudicate Plaintiff's other claims for relief in this action is invoked pursuant to 28 U.S.C. § 1367(a), as these claims are so related as to form part of the same case or controversy.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this District, and Defendants operate their business in this District. Plaintiff was employed by Defendants in this District. The retaliatory acts and defamatory statements directed at Plaintiff were also carried out, and their effects were felt, in this District.

III. PARTIES

6. At all times relevant to this action, Plaintiff resided in Rockland County, New York.

7. Plaintiff, Shaya Efroymson, is, and was at all times relevant to this Complaint, a citizen of the United States and a resident of Rockland County, State of New York. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant LBAPS and was otherwise covered under each of the statutes described in paragraph 1 above. Plaintiff worked as an ABA para for Defendants for all periods relevant to the Complaint.

8. Defendant LBAPS is based in Brooklyn, New York, and has locations in several states in the United States. Plaintiff performed his services for Defendants in Rockland County, New York. LBAPS is an "employer" and is otherwise covered under each of the statutes described in paragraph 1 of this Complaint. Upon information and belief, LBAPS is a domestic professional limited liability corporation organized and existing under the laws of the State of New York.

9. Upon information and belief, Defendant Adelman is an individual engaging (or who was engaged) in business on behalf of LBAPS in this judicial district during the relevant time period in this Complaint. Adelman is sued individually in her capacity as owner, officer and/or agent of LBAPS. For all periods relevant to the Complaint, Adelman possessed operational control over LBAPS, an ownership interest in LBAPS, and/or controlled significant functions of LBAPS. She determined the wages and compensation of the employees of LBAPS, including Plaintiff's, established the schedules of the employees, was responsible for maintaining employee records, and/or had the authority to hire and/or fire employees. Defendant Adelman is sued directly in her individual capacity as Plaintiff's employer under the FLSA and the New York Labor Law.

IV. DEFENDANTS CONSTITUTE JOINT EMPLOYERS

10. Defendants operate a company which provides Applied Behavior Analysis ("ABA") with the goal of teaching autistic children how to lead fulfilling lives and overcome other challenges that autistic individuals face.

11. Individual Defendant Adelman possesses operational control over LBAPS, possesses ownership interest in LBAPS, and/or controls significant functions of LBAPS.

12. Adelman is associated and a joint employer with LBAPS, acts in the same interest as LBAPS with respect to employees, pays employees by the same method, and shares control over the employees.

13. Each Defendant possessed substantial control over Plaintiff's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff and all similarly situated individuals referred to herein.

14. Defendants jointly employed Plaintiff (and all similarly situated employees) and are Plaintiff's (and all similarly situated employees') employers within the meaning of 29 U.S.C. § 201 et seq. and the New York Labor Law.

15. Alternatively, Defendants constitute a single employer of Plaintiff and/or similarly situated employees.

16. Upon information and belief, Adelman operates LBAPS as either an alter ego of herself and/or fails to operate LBAPS as an entity legally separate and apart from herself by, among other things:

a. failing to adhere to corporate formalities necessary to operate LBAPS as a corporation;

b. defectively forming or maintaining the corporate entity of LBAPS by, among other things, failing to hold annual meetings or maintain appropriate corporate records;

c. transferring assets and/or debts freely as between the Defendants;

d. operating LBAPS for her own benefit as the sole or majority shareholder;

e. operating LBAPS for her own benefit and maintaining control over this corporation as a closed corporation;

f. intermingling assets and/or debts of her own with LBAPS;

g. diminishing and/or transferring assets of LBAPS to avoid full liability as necessary to protect her own interests; and

h. other actions evincing a failure to adhere to the corporate form.

17. At all times relevant to the Complaint, Defendants were Plaintiff's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff's services. Defendant Adelman is also being sued directly in her individual capacity as Plaintiff's employer under the FLSA and the New York Labor Law.

18. Upon information and belief, in each year from 2019 to 2024, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000.

19. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the business are goods produced outside of the State of New York, and Defendants provided services in several states in the United States.

V. INDIVIDUAL PLAINTIFF

20. Plaintiff is a former employee of Defendants who was employed as an ABA para.

21. Plaintiff seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

22. Plaintiff was employed by Defendants during July and August 2021 and from approximately March 2022 until on or about June 30, 2024.

23. Defendants employed Plaintiff as an ABA para. The job of Plaintiff was to teach and train autistic children how to navigate life by improving such children's social skills and other life skills.

24. Plaintiff's work duties required neither discretion nor independent judgment.

25. Plaintiff was not an exempt employee under the federal and New York labor laws.

26. Defendants' wage and hour violations, as well as the failure to provide wage statements under the New York Labor Law, extended beyond Plaintiff to all other similarly situated employees. Plaintiff seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

27. Set forth below are the facts pertinent to each of the specific causes of action set forth in this Complaint.

VI. ADDITIONAL FACTUAL BACKGROUND – RETALIATION AND DEFAMATION

28. After Plaintiff filed the original Complaint in this action in or about February 2025, asserting wage and hour violations against Defendants, Defendant Adelman and those acting in concert with her launched a systematic, multi-pronged campaign of intimidation and retaliation against Plaintiff—and against his counsel—designed to pressure Plaintiff into abandoning his lawful claims. That campaign is described fully in the additional factual allegations set forth below in Section VII of this Complaint.

VII. ADDITIONAL FACTUAL ALLEGATIONS – RETALIATION AND DEFAMATION

A. Background: Religious Court Proceedings and the Heter to Proceed in Secular Court

29. Plaintiff and Defendant Adelman are both members of the Orthodox Jewish community in the greater New York area. In that community, it is considered improper under Jewish religious law (halacha) to commence a lawsuit in secular court against a fellow community member without first obtaining permission from a recognized rabbinical authority—known as "heter arkaos" (hereinafter referred to in this Complaint as "heter") to proceed in secular court—or without the other party having refused to appear before a rabbinical court (bais din).

30. Prior to or in connection with the commencement of this action, Plaintiff sought and obtained a heter from Rabbi Gobioff, a recognized rabbinical authority, authorizing Plaintiff to proceed in secular court against Defendant Adelman to vindicate his wage and hour claims.

31. Rabbi Gobioff granted the heter based on the fact that Defendant Adelman had refused or failed to appear at bais din when summoned by Rabbi Gobioff's bais din in an unrelated matter, thus not complying with rabbinical court process, rendering her a "mesareves" (one who refuses to appear before a rabbinical court). As a result of her being labeled a mesareves, Rabbi Gobioff ruled that it was permissible for Plaintiff to commence a case against Defendant in secular court.

32. After this action was commenced, Defendant Adelman began a campaign to derail the litigation through improper use of rabbinical process.

33. As part of that campaign, in early February 2026 she caused an individual identifying himself as "Rabbi Gold" to initiate illegitimate bais din proceedings against Plaintiff, including the issuance of hazmanos and a seruv. As set forth in these hazmonos, the purpose of that bais din proceeding was to compel Plaintiff withdraw this federal action and to submit the wage and hour dispute to Gold's bais din. Each of these hazmonos stated that it was issued at Adelman's request. These actions were timed and structured to intimidate Plaintiff and disrupt the federal litigation.

34. Shortly thereafter, in March 2026, after Defendant settled a separate matter for which she had previously been deemed a mesareves, she repeatedly pressed Rabbi Gobioff to revisit the heter he had issued permitting Plaintiff to proceed in secular court. Following Defendant's settlement of that other matter, Rabbi Gobioff withdrew his prior heter, stating that the question of whether Plaintiff could continue in federal court was now open.

35. Defendant immediately used this development to attempt to halt her scheduled deposition and urged the Court to require Plaintiff to proceed in bais din. Rabbi Gobioff then wrote directly to Judge Seibel expressing his view that the matter should be heard in bais din. Judge Seibel ruled that Rabbi Gobioff's opinion was not binding on the Court and granted Plaintiff a short period to determine how to proceed.

35A. Because the withdrawal of the heter occurred only after Defendant had actively litigated this case for many months—including filing a summary judgment motion and participating in discovery—Plaintiff's counsel sought halachic clarification from a qualified authority to determine whether Plaintiff remained permitted to continue litigating his claims in federal court.

35B.The halachic authority consulted confirmed that Plaintiff was permitted to continue in federal court. Plaintiff so advised Judge Seibel, and the case proceeded accordingly.

B. The First Bais Din Campaign – "Rabbi Gold" (a/k/a "Rabbi Stewart") – Hazmanos, Ikkul, and Seruv

36. Defendant Adelman, in furtherance of her retaliatory scheme, caused proceedings to be initiated against Plaintiff before a rabbinical court presided over by an individual calling himself "Rabbi Gold," also known as "Rabbi Stewart" ("Gold"). Upon information and belief, Gold is not a legitimately ordained dayan (rabbinical judge) recognized by mainstream Orthodox Jewish communal authorities, and his purported "bais din" lacked the legitimacy and standing of a recognized rabbinical court.

37. Gold used threatening, abusive, and wholly inappropriate language directed at Plaintiff, at Plaintiff's counsel Bernard Weinreb, Esq., and even at Rabbi Gobioff, in a transparent effort to intimidate Plaintiff, his counsel, and any rabbinical authority that had supported Plaintiff's right to proceed in secular court.

38. As part of this scheme, Gold caused hazmanos—formal rabbinical summonses—to be issued against Plaintiff on three separate occasions. On each of those three occasions, the hazmanos were delivered to Plaintiff late at night, demanding that Plaintiff respond by the following morning and appear before Gold's purported bais din that very afternoon. This pattern—a nighttime summons demanding a response and personal appearance within hours—was repeated three times and was calculated to harass, overwhelm, and intimidate Plaintiff, and to make meaningful compliance impossible. See the Gold Hazmanas attached hereto as Exhibit A.

38A. In connection with the first such hazmana issued by the Gold bais din, Adelman advised the court via an email to Shimson Stewart of that bais din that she will be attending the din torah the following day, as she was now the plaintiff in that bais din proceeding.

39. In the context of the Orthodox Jewish community in which Plaintiff lives and works, if a"seruv" is issued by the bais din for ignoring hazmanos carry significant negative connotations. Their issuance is widely understood to reflect adversely on the recipient's standing and religious integrity, and their public circulation was designed by Defendants to damage Plaintiff's reputation within the community.

40. After Plaintiff, for legitimate reasons—including the improper nature of the proceedings and the lack of a recognized bais din—declined to appear before Gold on the shortened and abusive schedule demanded, Gold caused a seruv and related communal-ostracism sanctions to be issued against Plaintiff. These sanctions publicly labeled Plaintiff as a "mesarev l'din," carried significant potential to harm Plaintiff's reputation within his community, and caused Plaintiff substantial emotional distress.

41. A seruv is a formal rabbinical contempt decree, published publicly and circulated within the Jewish community, declaring that its subject has refused to comply with a rabbinical court's directives. In Plaintiff's community, a seruv carries profound

stigma and severely damages the subject's ability to participate in religious, social, and economic life.

42. The seruv against Plaintiff was false and unwarranted. Gold's purported bais din lacked legitimacy, the hazmanos were issued in an abusive and impossible manner, Plaintiff had a valid heter to proceed in secular court, and later received confirmation from a qualified halachic authority that he remained permitted to continue in federal court. Plaintiff's refusal to submit to Gold's illegitimate proceedings was entirely justified.

43. The seruv was published online in a manner accessible to members of Plaintiff's religious community, including individuals who were or could be Plaintiff's employers, customers, clients, or community associates.

44. Upon information and belief, after Plaintiff asserted his legal rights in connection with the seruv, Defendants caused or directed the deletion and/or retraction of the seruv publication. This deletion was not a good-faith correction; rather, it was an attempt to destroy or suppress evidence of Defendants' retaliatory and defamatory conduct and to evade legal accountability. The deletion does not undo the harm caused by the seruv's publication; the statements were already publicly disseminated and the reputational damage was already inflicted upon Plaintiff. The deletion itself evidences Defendants' consciousness of guilt.

C. The Second Bais Din – Adelman's Litigation-Disruption Tactic

45. Defendant Adelman, not content with the campaign conducted through Gold's purported bais din, separately arranged for the initiation of a second rabbinical court proceeding against Plaintiff before the Badatz, a rabbinical court in which Rabbi Kirsch served as a dayan. Each of these hazmonos stated that it was issued at Adelman's request. In this second bais din proceeding, Adelman was suing Plaintiff, Efroymson, and his attorney, Bernard Weinreb, Esq., to recover $100,000 plus to compensate her for the legal expenses she allegedly incurred in defending this federal wage and hour lawsuit, i.e., this federal litigation. See the Badatz hazmonos attached hereto as Exhibit B. This second proceeding was not a legitimate religious dispute resolution effort. Rather, it was calculated as a litigation disruption tactic, timed and structured specifically to interfere with Plaintiff's prosecution of his civil wage claims in this Court.

46. In the Badatz proceeding before Rabbi Kirsch, hazmanos were issued not only against Plaintiff but also against his counsel, Bernard Weinreb, Esq. Both Plaintiff and his counsel were named as respondents and were threatened with claims alleged to be in excess of one hundred thousand dollars ($100,000).

47. The timing of the Badatz proceeding before Rabbi Kirsch is particularly telling: the initiation of that proceeding, and the issuance of the hazmanos thereunder, occurred on or about the same date that Defendant Adelman was scheduled to appear for her deposition in this action. Upon information and belief, the commencement of the Badatz proceeding before Rabbi Kirsch at that precise moment was deliberate and was intended to create a pretext for Adelman to avoid or delay her deposition, to

burden and distract Plaintiff's counsel, and to coerce Plaintiff into withdrawing his claims.

48. The imposition of monetary claims exceeding $100,000 against Plaintiff and his counsel through this second bais din proceeding was itself an act of intimidation designed to threaten counsel's continued representation of Plaintiff and to pressure Plaintiff into abandoning this litigation.

D. Adelman's Direct Pressure on Plaintiff's Personal Rabbi

49. In furtherance of her retaliatory campaign, Defendant Adelman directly or indirectly contacted and exerted pressure upon Plaintiff's personal rabbi, seeking to have that rabbi urge or direct Plaintiff to drop this lawsuit.

50. Adelman's communications to Plaintiff's rabbi were designed to exploit the religious and communal authority that a personal rabbi holds in the Orthodox Jewish community—authority that carries far greater persuasive force on a devout community member than any economic or legal pressure—and to weaponize that relationship against Plaintiff's exercise of his federal and state legal rights.

51. This effort to use Plaintiff's own rabbi against him is particularly egregious because it demonstrates Defendants' intent not merely to retaliate in the marketplace but to reach into the most intimate religious dimensions of Plaintiff's life in order to coerce him into surrendering his legal rights.

E. Negative and Defamatory Employment Reference

52. During and after the retaliatory campaign described above, Defendant Adelman, or others acting at her direction, provided a false and negative employment reference about Plaintiff to at least one prospective employer or professional contact of Plaintiff.

53. The statements made in this reference included false representations of fact regarding Plaintiff's performance, character, honesty, and/or fitness for employment, made with knowledge of their falsity or with reckless disregard for their truth or falsity.

54. As a direct result of this false reference, Plaintiff suffered concrete economic harm, including the loss of prospective employment and professional opportunities.

55. The negative reference was motivated in whole or in part by Plaintiff's filing of his wage-and-hour claims in this action and constituted a further act of retaliation.

F. Post-Filing Intimidation and Continuing Retaliation

56. After Plaintiff filed the original Complaint in this action, Defendants did not cease their retaliatory conduct but instead escalated their campaign of intimidation and harassment, as described throughout this Section VII.

57.Each of the acts described above—including the multiple hazmanos issued on impossible schedules, the issuance and subsequent deletion of the seruv, the second

bais din proceeding timed to coincide with Adelman's scheduled deposition, the naming of Plaintiff's counsel as a respondent in that proceeding and asserting claims exceeding $100,000, the pressure exerted on Plaintiff's personal rabbi, and the false employment reference—occurred after the filing of this action and constitutes an independent act of retaliation in violation of the FLSA and the NYLL.

57A. The continuing nature of Defendants' retaliatory conduct demonstrates that their actions were not isolated or inadvertent but reflect a deliberate and willful campaign to suppress Plaintiff's legal rights.

58.Defendants' post- filing conduct has caused Plaintiff ongoing and compounding harm, including reputational damage, emotional distress, and interference with his ability to participate fully in his community and his profession, and has created a substantial risk of economic harm.

VIII. AS AND FOR FIRST CLAIM FOR RELIEF
(UNPAID WAGES AND OVERTIME – FLSA)

60. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 59, as if set forth fully herein.

61. Plaintiff started working for Defendants in the summer, July and August, of 2021. Plaintiff's salary for that summer was approximately $960 per week.

62. Plaintiff worked for approximately nine (9) weeks during the summer of 2021. Thus, he should have been paid $8,649 for that summer. However, all that Plaintiff received for those nine weeks of the summer of 2021 was $986. Thus, Plaintiff was underpaid by Defendants for his work for that summer in the amount of approximately $7,663.

63. After that summer, Plaintiff began working for LBAPS on or about March 1, 2022, at the rate of approximately $24 per hour. This rate of pay was in effect through on or about November 14, 2022. Plaintiff believes that during the period March 1, 2022 through November 14, 2022 he generally did not work overtime and is not owed overtime pay for that period of time of his employment for LBAPS.

64. On or about November 15, 2022, Plaintiff's salary was raised to $84,000 per year, which converts to a rate of $40.38 per hour. This rate of pay was in effect through Plaintiff's termination of employment on or about June 30, 2024.

65. Plaintiff worked approximately sixty (60) or more hours per week during each of his eighty-five (85) weeks of employment between November 15, 2022 and June 30, 2024. This weekly total includes all time spent performing required work before and after scheduled assignments, as well as substantial uncompensated time between assignments.

66. Plaintiff was not paid for any of his hours of work over forty (40) in each of those weeks.

67. Plaintiff is owed time and a half, or $60.57 per hour, for each of his hours of service over forty (40) for each of his eighty-five (85) weeks of employment between November 15, 2022 and June 30, 2024. Plaintiff did not receive this pay from Defendants for his overtime.

68. Thus, Plaintiff is owed $102,969 ($60.57 per hour, times twenty (20) hours a week, times eighty-five (85) weeks) for his period of service between November 15, 2022 and June 30, 2024.

69. Thus, Plaintiff is owed approximately $110,632 ($7,663, plus $102,969) for his unpaid straight time and overtime during his period of employment with Defendants during the period July 2021 through June 30, 2024.

70. In addition, pursuant to the FLSA, Plaintiff is owed an additional $110,632 in liquidated damages. Thus, the total of the straight time, overtime and liquidated damages due Plaintiff from Defendants is $221,264.

71. Furthermore, Defendants are liable for reasonable attorneys' fees at the amount awarded by the Court, as per the federal and state labor law statutes.

72. To Plaintiff's knowledge, Defendants did not utilize any time tracking device such as punch cards that accurately reflected the actual hours Plaintiff worked.

73. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff (and all similarly situated employees) to work in excess of forty (40) hours a week without paying them the appropriate overtime compensation as required by federal and state laws.

74. Plaintiff was a victim of Defendants' common policy and practice which violated his rights under the FLSA and New York Labor Law by, inter alia, not paying him the wages he was owed for the hours he worked.

75. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate and complete time sheets and payroll records.

76. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and the New York Labor Law.

77. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff (and similarly situated individuals) worked, and to avoid paying Plaintiff properly for his full hours worked.

78. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and New York Labor Law.

79. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff and other similarly situated current and former workers.

IX. AS AND FOR SECOND CLAIM FOR RELIEF
(UNPAID WAGES AND OVERTIME – NEW YORK LABOR LAW)

80. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 79, as if set forth fully herein.

81. Plaintiff is owed $110,632 in unpaid wages and overtime pay pursuant to the New York Labor Law, on account of Defendants not paying him the pay for his overtime hours to which he is entitled under the New York Labor Law.

82. In addition, Plaintiff is entitled to an additional $110,632 as liquidated damages with respect to his overtime pay, plus statutory interest on such amounts.

83. Thus, the total of the straight time, overtime and liquidated damages due Plaintiff from Defendants under the New York Labor Law is $221,264.

X. AS AND FOR THIRD CLAIM FOR RELIEF
(FAILURE TO PROVIDE WAGE STATEMENTS – NEW YORK LABOR LAW)

84. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 83, as if set forth fully herein.

85. Defendants failed to provide Plaintiff and other employees with accurate wage statements at the time of their payment of wages, as required by NYLL § 195(3). Although Plaintiff received pay stubs, those stubs were materially false and incomplete: they reflected only a portion of the compensation he actually earned, omitted substantial amounts of wages paid through other means, failed to list the correct rate or basis of pay, and failed to include the required information regarding hours worked, overtime hours, overtime rates, and total wages earned.

86. As a result of not receiving such wage statements, Plaintiff was harmed in that Defendants' failure to provide him with accurate wage statements deprived him of the information necessary to review his wages and hours worked and was a direct cause of his economic injury and, in fact, resulted in his wages being underpaid.

XI. AS AND FOR FOURTH CLAIM FOR RELIEF
(FAILURE TO PROVIDE STATEMENTS AT TIME OF HIRE – NEW YORK LABOR LAW)

87. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 86, as if set forth fully herein.

88. Upon information and belief, Defendants failed to provide Plaintiff and other employees, at the time of hiring, a written notice in English and in the employee's primary language containing the rate or rates of pay and basis thereof; any allowances claimed as part of the minimum wage; the regular payday designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business; and the employer's telephone number, as required by NYLL § 195(1).
89. As a result of not receiving such wage notice at his time of hire, Plaintiff suffered the harms described in paragraph 86 of this Complaint.

XII. FLSA COLLECTIVE ACTION CLAIMS

90. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 89, as if set forth fully herein.

91. Plaintiff brings his FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA class period").

92. At all relevant times, Plaintiff and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at one and one-half their regular rates for work in excess of forty (40) hours per workweek and minimum wage under the FLSA and willfully failing to keep records under the FLSA.

93. The claims of Plaintiff stated herein are similar to those of other employees.

XIII. AS AND FOR FIFTH CLAIM FOR RELIEF
(RETALIATION – FAIR LABOR STANDARDS ACT) (29 U.S.C. § 215(a)(3))

94. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 93, as if set forth fully herein.

95. Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."

96. Plaintiff engaged in protected activity under the FLSA by filing the original Complaint and Amended Complaint in this action asserting wage-and-hour violations, and by making prior internal complaints regarding Defendants' failure to pay lawful wages.

97. Defendants were aware of Plaintiff's protected activity no later than the date of service of the original Complaint.

98. Following Plaintiff's protected activity, Defendant Adelman, and those acting in concert with her, retaliated against Plaintiff by, inter alia:

a. Pressuring Rabbi Gobioff to withdraw the heter he had previously granted Plaintiff to proceed in secular court, thereby attempting to strip Plaintiff of the religious authorization that Plaintiff reasonably understood to be necessary in his community to pursue this litigation;

b. Causing the individual known as "Rabbi Gold" (a/k/a "Rabbi Stewart")—a person who, upon information and belief, is not a legitimate dayan—to initiate an illegitimate rabbinical court proceeding against Plaintiff and to issue three hazmanos on abusive and impossible schedules (including late- night delivery demanding appearance the following morning), for the purpose of harassing and coercing Plaintiff into withdrawing his civil wage claims;

c. Through Gold, causing a seruv and related communal- ostracism sanctions to be issued against Plaintiff after Plaintiff, for legitimate reasons, declined to appear before Gold's illegitimate bais din on the impossibly short schedules demanded;

d. Through Gold, causing a false and defamatory seruv to be published and disseminated within the Orthodox Jewish community, and subsequently causing or directing the deletion of the seruv to conceal evidence of wrongdoing;

e. Arranging a second bais din proceeding before a separate rabbinical court, timed to coincide with Adelman's scheduled deposition in this action, in which both Plaintiff and his counsel, Bernard Weinreb, Esq., were named as respondents and subjected to claims exceeding $100,000, for the purpose of disrupting the litigation, threatening Plaintiff's counsel, and coercing Plaintiff into abandoning his claims;

f. Directly or indirectly pressuring Plaintiff's personal rabbi to urge or direct Plaintiff to drop this lawsuit;

g. Providing a false and defamatory employment reference about Plaintiff to at least one prospective employer; and

h. Engaging in additional retaliatory acts that may be revealed through discovery.

99. There is a direct causal connection between Plaintiff's protected activity and Defendants' retaliatory acts. Defendants' retaliatory campaign was launched in response to the filing of this action and was expressly designed to punish Plaintiff for asserting his rights and to coerce him into abandoning his claims.

100. Defendants' retaliation was willful within the meaning of the FLSA.

101. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered and continues to suffer damages including: lost wages and earning capacity; loss of employment and professional opportunities; reputational harm; severe emotional distress and mental anguish; exclusion from community and professional life; and other economic and non-economic damages in an amount to be determined at trial.

102. Plaintiff is entitled to all relief available under 29 U.S.C. § 216(b), including lost wages, compensatory damages, punitive damages where available, attorneys' fees, costs, and such other relief as the Court deems just and proper.

XIV. AS AND FOR SIXTH CLAIM FOR RELIEF
(RETALIATION – NEW YORK LABOR LAW § 215)

103. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 102, as if set forth fully herein.

104. New York Labor Law § 215 provides that no employer or its agent shall discharge, penalize, threaten, or in any other manner discriminate or retaliate against any employee because such employee has made a complaint or instituted or caused to be instituted a proceeding under or related to the New York Labor Law.

105. Plaintiff engaged in protected activity under the NYLL by commencing this action asserting violations of the New York Labor Law.

106. Defendants were aware of Plaintiff's protected activity.

107. Defendants retaliated against Plaintiff in the manner fully described in paragraphs 29 through 59 and as enumerated in paragraph 98(a) through (h) above, all of which are incorporated herein by reference.

108. There is a direct causal connection between Plaintiff's protected activity under the NYLL and Defendants' retaliatory acts.

109. Defendants' retaliation was willful.

110. As a direct and proximate result of Defendants' retaliation under the NYLL, Plaintiff has suffered the damages described in paragraph 101 above.

111. Pursuant to NYLL § 215(2), Plaintiff is entitled to recover lost wages, compensatory damages, liquidated damages equal to one hundred percent (100%) of damages due, injunctive relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

XV. AS AND FOR SEVENTH CLAIM FOR RELIEF
(DEFAMATION – LIBEL AND/OR SLANDER PER SE) (NEW YORK COMMON LAW)

112. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 111, as if set forth fully herein.

113. Defendants made false and defamatory statements of fact about Plaintiff to third parties, including members of Plaintiff's religious community and prospective employers.

114. The false and defamatory statements made by or at the direction of Defendants include, but are not limited to:

a. Statements contained in or conveyed by the seruv falsely representing that Plaintiff had unlawfully refused to comply with the directives of a legitimate rabbinical court, was in contempt of a lawful bais din proceeding, and/or had acted dishonestly or in bad faith in connection with his religious obligations—all of which were false, as the underlying bais din proceedings were illegitimate, the hazmanos were issued on abusive schedules, and Plaintiff possessed valid rabbinical authorization to proceed in secular court;

b. False oral and/or written statements made by or at the direction of Defendants to community rabbis, religious leaders, and community members falsely characterizing Plaintiff's conduct, honesty, religious compliance, and standing; and

c. The false negative employment reference provided by Defendants to at least one prospective employer of Plaintiff, containing false statements regarding Plaintiff's performance, character, competence, honesty, and/or fitness for employment.

115. Each of the foregoing categories of statements was false.

116. Defendants, and those acting in concert with them, knew these statements were false at the time they were made, or made them with reckless disregard for their truth or falsity.

117. The statements described above constitute defamation per se under New York law because they: (a) falsely charge Plaintiff with contempt of a court of competent authority and bad-faith refusal to comply with legal process; (b) tend to injure Plaintiff in his trade, business, and profession by charging him with dishonesty, incompetence, and unfitness; and (c) subject Plaintiff to public ridicule, contempt, and disgrace within his community.

118. Because the statements are defamatory per se, Plaintiff need not plead or prove special damages, although in fact Plaintiff has suffered and continues to suffer substantial special damages as described herein.

119. Defendants published and/or caused the publication of these statements to third parties, including but not limited to community members, religious leaders, and prospective employers, without privilege.

120. The subsequent deletion and/or retraction of the seruv—effected not to correct the record in good faith but to destroy evidence and evade accountability—does not cure the harm already caused by its publication. The statements were already widely disseminated and the reputational damage was already inflicted.

121. As a direct and proximate result of Defendants' defamatory statements, Plaintiff has suffered damage to his personal and professional reputation; loss of employment and business opportunities; loss of standing within his religious community; severe emotional distress and mental anguish; and other special and general damages in amounts to be determined at trial.

122. Because Defendants' defamatory conduct was intentional, malicious, and in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## XVI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court award the following relief:

ON THE FIRST CLAIM FOR RELIEF (FLSA – UNPAID WAGES AND OVERTIME):

A. Actual damages for loss of wages and overtime pay, in the amount of $$110,632; plus

B. Liquidated damages equal to $$110,632; plus

C. Reasonable attorneys' fees.

ON THE SECOND CLAIM FOR RELIEF (NYLL – UNPAID WAGES AND OVERTIME):

A. Actual damages for loss of wages and overtime pay, in the amount of $$110,632; plus

B. Liquidated damages equal to $$110,632; plus

C. Reasonable attorneys' fees.

ON THE THIRD CLAIM FOR RELIEF (FAILURE TO PROVIDE WAGE STATEMENTS):

A. Statutory damages in the amount of $5,000.

ON THE FOURTH CLAIM FOR RELIEF (FAILURE TO PROVIDE STATEMENTS AT HIRE):

A. Statutory damages in the amount of $5,000.

ON THE FIFTH CLAIM FOR RELIEF (FLSA RETALIATION):

A. Compensatory damages for all economic and non-economic harm suffered as a result of Defendants' retaliation, including lost wages and earning capacity, loss of

professional opportunities, reputational harm, and severe emotional distress, in an amount to be determined at trial;

B. Punitive damages to the extent available under applicable law;

C. Equitable and injunctive relief as the Court deems appropriate, including an order directing Defendants to cease and desist from further retaliatory conduct;

D. Reasonable attorneys' fees and costs.

ON THE SIXTH CLAIM FOR RELIEF (NYLL RETALIATION):

A. Compensatory damages for all harm suffered as a result of Defendants' retaliation in an amount to be determined at trial;

B. Liquidated damages equal to one hundred percent (100%) of damages due pursuant to NYLL § 215(2);

C. Injunctive relief, including an order directing Defendants to cease and desist from further retaliatory conduct;

D. Reasonable attorneys' fees and costs.

ON THE SEVENTH CLAIM FOR RELIEF (DEFAMATION):

A. Compensatory damages for reputational harm, emotional distress, and lost economic opportunities in an amount to be determined at trial;

B. Special damages for identifiable lost employment and business opportunities;

C. Punitive damages reflecting the intentional and malicious nature of Defendants' conduct;

D. Pre- and post-judgment interest.

ON ALL CLAIMS:

A. Award Plaintiff the costs of this action;

B. An order enjoining Defendants from engaging in the wrongful practices alleged herein;

C. Grant Plaintiff such other and further relief as may be deemed necessary, just and proper by this Court.

XVII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable of right by jury in this action, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: Spring Valley, New York
October 12, 2026

______________________________
Bernard Weinreb, Esq.
Attorney for Plaintiff
Law Office of Bernard Weinreb, P.C.
2 Perlman Drive, Suite 310
Spring Valley, New York 10977
(845) 369-1019
boruchw@cs.com

THESE EXHIBITS ADDED TO THIRD AMENDED COMPLAINT

# EXHIBIT A

**תורה לדין חזמנא**

**ב"ה**

כבד את להזמין יואל וירצברגר בבקשה אלינו פנה'

דיננו בית אל להתקשר ' מכבד מבקשים הננו לכן .תורה לדין

הטענות לשמוע וכדי פגישה לתאם כדי זו הזמנה קבלת עם

הצדדים שני של והתביעות.

ההר את הדין ויקוב

February 2, 2026

# ט"ז שבט תשפ"ו .

By E-Mail

R' Shaya Efroymson

Dear R' Efroymson:

We have been contacted by Yocheved Wasserman, who has requested that we summon you to a din torah regarding a claim for unpaid wages. The Beis Din may share your response to this summons with the plaintiff. We ask that you respond to this summons by no later than Tuesday, February 3, 2026, 10am, and your written response, sent to batiedin@gmail.com, should indicate whether you are prepared to submit this matter to a din torah (arbitration) before our Beis Din. Please note that it is not necessary for you to argue your case on its merits in your response, since substantive determinations can only be made after a full hearing in the context of a din torah. The din torah is scheduled for Tuesday, February 3, 2026, for 2:30pm, at 1218 36 Street, Brooklyn, NY, 11218. Should you have any questions regarding the Beth Din process, please feel free to contact us at 718-753-1818.

Sincerely,

הרב אברהם זליג גולד אב"ד

HaRav Avrohom Zelig Gold, Av Beis Din

Boost Mobile LTE 8:36 PM 89%

Hazmana Efroymson2 (3) Done

**חזמנא לדין תורה**

ב"ה

פנה אלינו יואל וירצברגר בבקשה להזמין את'
כבד
לדין תורה. לכן הננו מבקשים מכבד '
להתקשר אל בית דיננו
עם קבלת הזמנה זו כדי לתאם פגישה וכדי
לשמוע הטענות
והתביעות של שני הצדדים.
ויקוב הדין את ההר

February 4, 2026

י"ז שבט תשפ"ו

By E-Mail
R' Shaya Efroymson

Dear R' Efroymson:

We have been contacted by Yocheved Wasserman, who has requested that we summon you to a din torah regarding a claim for unpaid wages. The Beis Din may share your response to this summons with the plaintiff. We ask that you respond to this summons by no later than Thursday, February 5, 2026, 10am, and your written response, sent to batiedin@gmail.com, should indicate whether you are prepared to submit this matter to a din torah (arbitration) before our Beis Din. Please note that it is not necessary for you to argue your case on its merits in your response, since substantive determinations can only be made after a full hearing in the context of a din torah. The din torah is scheduled for Thursday, February 5, 2026, for 2pm, at 1218 36 Street, Brooklyn, NY, 11218. Should you have any questions regarding the Beth Din process, please feel free to contact us at 718-753-1818.

Sincerely,

הרב אברהם זליג גולד אב"ד
HaRav Avrohom Zelig Gold, Av Beis Din

**תורה לדין חזמנא**

**ב"ה**

כבד את להזמין יואל וירצברגר בבקשה אלינו פנה'

דיננו בית אל להתקשר ' מכבד מבקשים הננו לכן .תורה לדין

הטענות לשמוע וכדי פגישה לתאם כדי זו הזמנה קבלת עם

הצדדים שני של והתביעות.

ההר את הדין ויקוב

February 10, 2026

כ"ג שבט תשפ"ו

By E-Mail

R' Shaya Efroymson

Dear R' Efroymson:

We have been contacted by Yocheved Wasserman, who has requested that we summon you to a din torah regarding a claim for unpaid wages. The Beis Din may share your response to this summons with the plaintiff. We ask that you respond to this summons by no later than Wednesday, February 11, 2026, 10am, and your written response, sent to batiedin@gmail.com, should indicate whether you are prepared to submit this matter to a din torah (arbitration) before our Beis Din. Please note that it is not necessary for you to argue your case on its merits in your response, since substantive determinations can only be made after a full hearing in the context of a din torah. The din torah is scheduled for Wednesday, February 4, 2026, for 2:30pm, at 1218 36 Street, Brooklyn, NY, 11218. Should you have any questions regarding the Beth Din process, please feel free to contact us at 718-753-1818.

Sincerely,

הרב אברהם זליג גולד אב"ד

HaRav Avrohom Zelig Gold, Av Beis Din

# EXHIBIT A

**תורה לדין חזמנא**

**ב"ה**

כבד את להזמין יואל וירצברגר בבקשה אלינו פנה'

דיננו בית אל להתקשר ' מכבד מבקשים הננו לכן .תורה לדין

הטענות לשמוע וכדי פגישה לתאם כדי זו הזמנה קבלת עם

הצדדים שני של והתביעות.

ההר את הדין ויקוב

February 2, 2026

ט״ז שבט תשפ״ו .

By E-Mail

R' Shaya Efroymson

Dear R' Efroymson:

We have been contacted by Yocheved Wasserman, who has requested that we summon you to a din torah regarding a claim for unpaid wages. The Beis Din may share your response to this summons with the plaintiff. We ask that you respond to this summons by no later than Tuesday, February 3, 2026, 10am, and your written response, sent to batiedin@gmail.com, should indicate whether you are prepared to submit this matter to a din torah (arbitration) before our Beis Din. Please note that it is not necessary for you to argue your case on its merits in your response, since substantive determinations can only be made after a full hearing in the context of a din torah. The din torah is scheduled for Tuesday, February 3, 2026, for 2:30pm, at 1218 36 Street, Brooklyn, NY, 11218. Should you have any questions regarding the Beth Din process, please feel free to contact us at 718-753-1818.

Sincerely,

הרב אברהם זליג גולד אב"ד

HaRav Avrohom Zelig Gold, Av Beis Din

Boost Mobile LTE 8:36 PM 89%

Hazmana Efroymson2 (3) Done

**חזמנא לדין תורה**

**ב"ה**

פנה אלינו יואל וירצברגר בבקשה להזמין את'
כבד
לדין תורה. לכן הננו מבקשים מכבד '
להתקשר אל בית דיננו
עם קבלת הזמנה זו כדי לתאם פגישה וכדי
לשמוע הטענות
והתביעות של שני הצדדים.
ויקוב הדין את ההר

February 4, 2026

י"ז שבט תשפ"ו

By E-Mail
R' Shaya Efroymson

Dear R' Efroymson:
We have been contacted by Yocheved Wasserman, who has requested that we summon you to a din torah regarding a claim for unpaid wages. The Beis Din may share your response to this summons with the plaintiff. We ask that you respond to this summons by no later than Thursday, February 5, 2026, 10am, and your written response, sent to batiedin@gmail.com, should indicate whether you are prepared to submit this matter to a din torah (arbitration) before our Beis Din. Please note that it is not necessary for you to argue your case on its merits in your response, since substantive determinations can only be made after a full hearing in the context of a din torah. The din torah is scheduled for Thursday, February 5, 2026, for 2pm, at 1218 36 Street, Brooklyn, NY, 11218. Should you have any questions regarding the Beth Din process, please feel free to contact us at 718-753-1818.
Sincerely,
הרב אברהם זליג גולד אב"ד
HaRav Avrohom Zelig Gold, Av Beis Din

**תורה לדין חזמנא**

**ב"ה**

כבד את להזמין יואל וירצברגר בבקשה אלינו פנה'

דיננו בית אל להתקשר ' מכבד מבקשים הננו לכן .תורה לדין

הטענות לשמוע וכדי פגישה לתאם כדי זו הזמנה קבלת עם

הצדדים שני של והתביעות.

ההר את הדין ויקוב

February 10, 2026

כ"ג שבט תשפ"ו

By E-Mail

R' Shaya Efroymson

Dear R' Efroymson:

We have been contacted by Yocheved Wasserman, who has requested that we summon you to a din torah regarding a claim for unpaid wages. The Beis Din may share your response to this summons with the plaintiff. We ask that you respond to this summons by no later than Wednesday, February 11, 2026, 10am, and your written response, sent to batiedin@gmail.com, should indicate whether you are prepared to submit this matter to a din torah (arbitration) before our Beis Din. Please note that it is not necessary for you to argue your case on its merits in your response, since substantive determinations can only be made after a full hearing in the context of a din torah. The din torah is scheduled for Wednesday, February 4, 2026, for 2:30pm, at 1218 36 Street, Brooklyn, NY, 11218. Should you have any questions regarding the Beth Din process, please feel free to contact us at 718-753-1818.

Sincerely,

הרב אברהם זליג גולד אב"ד

HaRav Avrohom Zelig Gold, Av Beis Din

# EXHIBIT B

BADATZ MISHPITEI YISROEL
Founded by:
Harav Ch. Yisroel Belsky
ZT"L
239 Foster Avenue
Brooklyn, NY 11230-2195

PREVIOUS-מלפנים
Badatz בד"ץ משפטי ישראל
Btzedek Tishpoit
The Bais Din of Harav Ch. Yisroel Belsky ZT"L

בד"ץ משפטי ישראל
ע"ש
הרה"ג חיים
ישראל הלוי בעלסקי
זצוקללה"ה
ברוקלין נוא יארק יצ"ו

**First Summons to appear in Bais Din to:**

Shaya Efroymson
efroymsons@gmail.com
by:
Bernard Weinreb, Esq.
Attorney for Plaintiff
2 Perlman Drive, Suite 310
Spring Valley, New York 10977
(845) 366-1019
boruchw@cs.com

**Requested by:**
Dr Yocheved Adelman
1317 East 8th street
Brooklyn NY 11230

sba5678@gmail.com

**In regard to claim of:**
100K and rising for legal fees, damages and defamation

**You are required to appear on:**
Monday, April 27, 2026, at 4PM

**Address:**
239 Foster Ave, Brooklyn, NY, USA

**No Din Torah will be arranged without prior confirmation!**
Please contact the Bais Din at once or at least 3 business days prior to appointment date to ensure both parties will be present.

**איסור הליכה לערכאות של גויים**

היות שהוא איסור חמור לילך לעש"ג ועי' חו"מ סי' כ"ו שכל מי שמכניס תביעותיו לעש"ג מרים יד בתורת מרע"ה ומחרף ומגדף ר"ל. ואפי' מקרי דרדקי יודעין מה שכתב רש"י תחילת פרשת משפטים שמי שהולך לערכאות מחלל את השם ומייקר שם עובדי כוכבים להשביחם (להחשיבם). ע"כ באנו בהתראה שלא תמשיך עוד בעש"ג אלא תלך לבי"ד המקובלת בישראל ויתדיינו שם.

**Ikul**: Being that it is forbidden for an Orthodox Jew to bring his claims before a secular court as per Shulchan Oruch *Ch"M* 26, One who goes to their courts is as if he raised his hand against the Torah of Moshe Rabeinu and it is as if he cursed and angered, R"L.

Even children that learn Chumash with Rashi know the Rashi in the beginning of Parshas Mishpatim that he who goes to Arkois desecrates the name of Hashem and causes the names of the Avodah Zarah to be praiseworthy.

Therefore we send you this warning that you must cease this behavior and come before Bais Din at once

וע"ז בעה"ח יום ב' ח' ניסן תשפ"ו
[signature]
אברהם יהושע העשיל הלוי קירש,
דיין הבד"צ בשם הבד"צ

**הזמנה ראשונה לדין תורה**

**לכבוד הנתבע:**
ר' ישעי' אפרימסון
ר' ברוך וויינריב

**ע"פ בקשת התובע:**
עדלמאן

**לענין התביעה:**
מאה אלף דאללער בעד הוצאות ערכאות, היזק, ומוצש"ר. ומוסיף והולך...

**ביום:** ב' לסדר אמר, י, אייר, תשפ"ו בשעה 4 אחה"צ

**כתובת:**
239 פאסטער עווניו, ברוקלין, נוא יארק

**אי אפשר להכין הדין תורה בלי לשמוע מקודם משני הצדדים שהם יבואו!**
נא להתקשר עם הב"ד מיד, ולכל הפחות שלשה ימים של ימי חול, קודם זמן המיועד כדי לסדר הד"ת על צד היותר טוב.

The Bais Din collects a fee of $250 per side per hour at the Din Torah. Small claims have a minimal fee. All fees must be paid at the time of the meeting in Bais Din.
For more information contact the Bais Din at:
Email Address: badatzmishpiteiyisroel@gmail.com Tel: 347-789-3126 Fax: 718-298-3166 Cell: 347-263-9696

BADATZ MISHPITEI YISROEL
Founded by:
Harav Ch. Yisroel Belsky
ZT"L
239 Foster Avenue
Brooklyn, NY 11230-2195

PREVIOUS-מלפנים
Badatz Mishpitei Yisroel
Bitzedek Tishpoit

בד"צ משפטי ישראל
ע"ש
הרה"ג חיים
ישראל הלוי בעלסקי
זצוקללה"ה
ברוקלין נוא יארק יצ"ו

**2nd Summons to appear in Bais Din to:**

Shaya Efroymson
efroymsons@gmail.com
by:
Bernard Weinreb, Esq.
Attorney for Plaintiff
2 Perlman Drive, Suite 310
Spring Valley, New York 10977
(845) 366-1019
boruchw@cs.com

**Requested by**:
Dr Yocheved Adelman
1317 East 8th street
Brooklyn NY 11230

sba5678@gmail.com

**In regard to claim of**:
100K and rising for legal fees, damages and defamation

**You are required to appear on**:
Monday, May 11, 2026, at 4PM

**Address**:
239 Foster Ave, Brooklyn, NY, USA

**No Din Torah will be arranged without prior confirmation!**
Please contact the Bais Din at once or at least 3 business days prior to appointment date to ensure both parties will be present.

**איסור הליכה לערכאות של גויים**

היות שהוא איסור חמור לילך לעש״ג ועי' חו״מ סי' כ״ו שכל מי שמכניס תביעותיו לעש״ג מרים יד בתורת מרע״ה ומחרף ומגדף ר״ל.
ואפי' מקרי דרדקי יודעין מה שכתב רש"י תחילת פרשת משפטים שמי שהולך לערכאות מחלל את השם ומייקר שם עובדי כוכבים להשביחם (להחשיבם).
ע"כ באנו בהתראה שלא תמשיך עוד בעש"ג אלא תלך לבי"ד המקובלת בישראל ויתדיינו שם.

**Ikul**: Being that it is forbidden for an Orthodox Jew to bring his claims before a secular court as per Shulchan Oruch *Ch"M* 26, One who goes to their courts is as if he raised his hand against the Torah of Moshe Rabeinu and it is as if he cursed and angered, R"L.

Even children that learn Chumash with Rashi know the Rashi in the beginning of Parshas Mishpatim that he who goes to Arkois desecrates the name of Hashem and causes the names of the Avodah Zarah to be praiseworthy.

Therefore we send you this warning that you must cease this behavior and come before Bais Din at once

וע"ז בעה"ח יום י"ז אייר תשפ"ו
אברהם יהושע העשיל הלוי קירש
דיין הבד"צ בשם הבד"צ

# התראת סירוב
# אם לא תפסיק בעש״ג יצא סירוב נגדך

**הזמנה ב' לדין תורה**
**לכבוד הנתבע:**
ר' ישעי' אפרימסון
ר' ברוך וויינריב

**ע"פ בקשת התובע:**
עדלמאן

**לענין התביעה:**
מאה אלף דאללער בעד הוצאות ערכאות, היזק, ומוצש"ר. ומוסיף והולך...

**ביום:** ב' לסדר במדבר, כ"ד אייר, תשפ"ו בשעה 4 אחה"צ

**כתובת:**
239 פאסטער עוועניו, ברוקלין, נוא יארק

**אי אפשר להכין הדין תורה בלי לשמוע מקודם משני הצדדים שהם יבואו!**
נא להתקשר עם הב"ד מיד, ולכל הפחות שלשה ימים של ימי חול, קודם זמן המיועד כדי לסדר הד"ת על צד היותר טוב.

The Bais Din collects a fee of $250 per side per hour at the Din Torah. Small claims have a minimal fee. All fees must be paid at the time of the meeting in Bais Din.
For more information contact the Bais Din at:
Email Address: badatzmishpiteiyisroel@gmail.com Tel: 347-789-3126 Fax: 718-298-3166 Cell: 347-263-9696

BADATZ MISHPITEI YISROEL
Founded by:
Harav Ch. Yisroel Belsky
ZT"L
239 Foster Avenue
Brooklyn, NY 11230-2195

PREVIOUS-מלפנים
Badatz
Btzedek Tishpoit

בד"צ משפטי ישראל
ע"ש
הרה"ג חיים
ישראל הלוי בעלסקי
זצוקללה"ה
ברוקלין נוא יארק יצ"ו

**3rd Summons to appear in Bais Din to:**

**התראת סירוב**

**אם לא תפסיק בעש"ג יצא סירוב נגדך**

Shaya Efroymson
efroymsons@gmail.com
by:
Bernard Weinreb, Esq.
Attorney for Plaintiff
2 Perlman Drive, Suite 310
Spring Valley, New York 10977
(845) 366-1019
boruchw@cs.com

**הזמנה ג' לדין תורה**

**לכבוד הנתבע:**
ר' ישעי' אפרימסון
ר' ברוך ווײנריב

**Requested by:**
Dr Yocheved Adelman
1317 East 8th street
Brooklyn NY 11230

sba5678@gmail.com

**ע"פ בקשת התובע:**
עדלמאן

**In regard to claim of:**
100K and rising for legal fees, damages and defamation

**לענין התביעה:**
מאה אלף דאללער בעד הוצאות ערכאות, היזק, ומוצש"ר. ומוסיף והולך...

**You are required to appear on:**
Monday, May 18, 2026, at 4PM

**ביום:** ב' לסדר שבועות, ב סיון, תשפ"ו בשעה 4 אחה"צ

**Address:**
239 Foster Ave, Brooklyn, NY, USA

**כתובת:**
239 פאסטער עוועניו, ברוקלין, נוא יארק

**No Din Torah will be arranged without prior confirmation!**

Please contact the Bais Din at once or at least 3 business days prior to appointment date to ensure both parties will be present.

**אי אפשר להכין הדין תורה בלי לשמוע מקודם משני הצדדים שהם יבואו!**
נא להתקשר עם הב"ד מיד, ולכל הפחות שלשה ימים של ימי חול, קודם זמן המיועד כדי לסדר הד"ת על צד היותר טוב.

**Please note:**
Rabbi Dovid Cohen's Heteraim are unacceptable and we shall issue a Siruv to acknowledge your disrepect of the Beis Din if you continue to defy the beis Din.

וע"ז בערה"ח יום כ"ג אייר תשפ"ו
[signature]
אברהם יהושע העשיל הלוי קירש,
דיין הבד"צ בשם הבד"צ